## HARDIN v. HARDIN.

1. APPEAL—EXCEPTIONS TO REFEREE'S REPORT.—An appeal lies from a decree confirming a referee's report to which there were no exceptions, where the matter involved in the appeal was not submitted to the referee nor considered by him.

2. RENTS OF MORTGAGED LAND.—As the mortgagor remains the owner of the mortgaged land, the rents belong to him until foreclosure, and the mortgagee has no lien on the rents and the profits, unless it is so stipulated in the mortgage.

3. CASES CRITICISED.—Cases reviewed, and a dictum in *Matthews* v. *Preston*, 6 Rich. Eq., 307, disapproved.

4. FORECLOSURE—RECEIVER OF RENTS.—Where a mortgage of land does not by its terms create any lien on the rents and profits and there is no allegation of waste, the mortgagee is not entitled to have a receiver appointed to collect the rents pending his action of foreclosure.

5. APPEAL RECORD—DISCLOSURE OF ERRORS.—Appellant must show error in the judgment appealed from, but he does this when the "Case" shows that an order for the appointment of a receiver to collect rents was not warranted by the mortgage, as stated in the appeal record.

6. APPOINTMENT OF RECEIVER.—The appointment of a receiver of property before the plaintiff has established an apparent right or claim to the property, would seem to be erroneous.

7. DECREE BINDING ON SUCCEEDING JUDGE—CONSEQUENTIAL ERRORS.— A Circuit Judge is bound to carry out the orders of his predecessor in the same cause, but when such previous orders are declared erroneous by the Appellate Court the consequential directions contained in the final decree will be also declared erroneous.

Before NORTON and WALLACE, JJ., Chester, March and June,
1890.

Action of foreclosure by W. H. Hardin against Martha E.
Hardin, commenced February 5, 1890. The opinion states the
case.

*Mr. W. A. Sanders*, for appellant.

*Messrs. Barber & James*, contra.

March 13, 1891. The opinion of the court was delivered by

MR. JUSTICE MCIVER. The action in this case was com-
menced on the 5th of February, 1890, to foreclose a mortgage on
real estate given to secure the payment of the purchase money of
the same. The complaint was in the usual form and, in addition
thereto, contained the allegations that the mortgaged premises
were totally inadequate to satisfy plaintiff's demand, and that
defendant had nothing to enable her to respond to a judgment
for the balance, and, in addition to the usual demand for relief,
the plaintiff demanded "such an order as would protect the pre-
mises and secure to him the *results* [probably a misprint for *rents*]
and profits pending the litigation." The defendant answered,
setting up various defences, including a general denial of the
allegations contained in the complaint.

On the 10th of March, 1890, notice was served on defendant
that, at the ensuing term of the court, an application would be
made for the appointment of a receiver, based upon the plead-
ings, certain affidavits, and the mortgage, copies of which were
served with the notice, and the deed of 23rd of February, 1887,
conveying the premises from the plaintiff to the defendant, upon
the ground that the mortgaged premises are in the possession of
the defendant; that the same are totally insufficient to pay the
amount due the plaintiff, and that defendant has no other pro-
perty out of which the mortgage debt can be satisfied. The affi-
davits are all set out in the "Case," and tend to show that the
defendant is insolvent, and that the mortgaged premises are not
sufficient to satisfy the mortgage debt. This motion was heard

by his honor, Judge Norton, who granted an order appointing a receiver of the rents and profits of the mortgaged premises, and directing the defendant to turn over to the receiver the said rents and profits.

The issues, both of law and fact, were referred to a referee, and at the trial before him the plaintiff established each and every allegation in his complaint, and the defendant having offered no evidence, the case was submitted to the referee without argument, who filed his report, to which no exceptions were taken, and upon this report Judge Wallace rendered judgment (of foreclosure, we presume, though it is not so stated in the "Case") on the 25th of June, 1890, which contained, amongst other things, the following provision : "It is further ordered, that the receiver of the rents and profits of the said premises pending this litigation, pay such sum as he may collect as rents, after deducting his commissions, to the plaintiff, should the sum realized from the sale of the premises be insufficient to satisfy his demands."

From this judgment, as well as from the interlocutory order of Judge Norton appointing a receiver, defendant appeals upon the several grounds set out in the record, which need not be repeated here.

Before proceeding to consider the merits of this appeal, it will be necessary to consider two preliminary objections raised by counsel for respondent, the first of which, however, will in our judgment be more appropriately considered in connection with the merits, and will therefore be passed over for the present. The second is, that inasmuch as there was no exception taken to the report of the referee, there could be no appeal taken from the final decree of his honor, Judge Wallace, confirming the referee's report. However this might be if the present appeal undertook to question the correctness of any of the findings of law or fact by the referee which were confirmed by the Circuit Judge, need not be considered, inasmuch as the appeal imputes no error in this respect, and questions only the right to have a receiver appointed, and the disposition of the rents and profits collected by him, a matter with which, so far as appears, the referee had nothing whatever to do. It seems to

us, therefore, that the appeal is properly before us, and it presents substantially but a single question—whether in the case as made by the plaintiff, he was entitled to an order for the appointment of a receiver; for if he was, then that portion of the decree of Judge Wallace which is appealed from was right, but if he was not, then it is erroneous.

It is well settled in this State that, by the act of 1791, as it has been construed in many decisions, which are so well known to the profession, as to render it unnecessary to cite them, the relation of mortgagor and mortgagee is totally different from that which existed at common law. By our law a mortgage of real estate is not a conveyance of any estate whatever, but is simply a contract whereby the mortgagee obtains a lien on the property mortgaged as a security for the payment of a debt. The mortgagor still remains, even after condition broken, the owner of the mortgaged premises, and retains all the rights incident to such ownership, amongst which is the right to receive the rents and profits, while the mortgagee simply holds a lien upon the property to secure the payment of his debt, which he may enforce in any of the modes recognized by law. But having no title to or ownership of the mortgaged premises, he cannot claim any of the rights incident to such a relation. His rights are limited by the terms of the contract as found in the mortgage, and by that contract he simply has a lien on the mortgaged premises, and that he may enforce in any proper way.

A mortgage on real estate in the usual form gives no lien upon the produce of the land; for if it did, then no one could safely buy from the mortgagor a bale of cotton, or any other produce raised upon the mortgaged premises, as it might be followed into the hands of the purchaser by the mortgagee and sold under his lien. On the contrary, the rule is well stated in the quotation from Jones on Mort., sec. 771, found at page 185, in the case of *Reeder & Davis* v. *Dargan*, 15 S. C., in these words: "A mortgagee has no specific lien upon the rents and profits of the mortgaged land, unless he has in the mortgage stipulated for a specific pledge of them as part of his security. He has no claim upon them until he has the right to take possession of the premises under the mortgage." It seems to us, therefore, that the ques-

tion whether the mortgagee can, before or pending proceedings for foreclosure, subject the rents and profits of the mortgaged premises to the payment of his debt, depends entirely upon the contract of the parties, as stated in the mortgage. If there is a stipulation therein that the mortgagee shall have a lien upon the rents and profits, as well as upon the land, then, of course, such lien may be made effective by the appointment of a receiver, under proper allegations and proofs; but if the mortgage contains no such stipulation, then the mortgagee has no higher or better claim to the rents and profits than an unsecured creditor of the mortgagor.

While the authorities elsewhere seem to be somewhat conflicting upon this point, growing probably out of the failure to keep in mind the marked distinction between the nature and effect of a mortgage at common law and under statutes like our act of 1791, it seems to us that the cases in this State are in accord with the view herein presented. The case of *Stoney* v. *Shultz* (1 Hill Ch., 499) is not in conflict, for there the mortgagor was out of possession, and hence, by the express terms of the statute, the provisions of the act of 1791 did not apply. It is true that Dargan, Ch., in *Matthews* v. *Preston* (6 Rich. Eq., 307), does intimate that where the mortgaged premises are in the occupancy of a tenant, under a lease from the mortgagor, the mortgagee may, by proper proceedings, subject the rents due by such tenant to the payment of the mortgage debt, citing the case of *Stoney* v. *Shultz, supra*, which, as we have seen, was a case in which the act of 1791 did not apply; but he says in the same case "that the mortgagor in possession is not liable to the mortgagee on account of rents." And again he says: "If the mortgagor or the assignee of the equity of redemption have tenants in possession of the mortgaged premises, paying rent, such tenants may be brought into this court and be required to pay the accruing rents, or their rents in arrear, for the benefit of a mortgagee whose security from the mortgaged premises is inadequate. But I am aware of no case, nor have I been able to find a single authority to support the proposition that the mortgagor or the assignee of his equity of redemption is liable to account to the mortgagee for rents in consequence of

*their own use* and occupation of the mortgaged premises, or for rents actually *received* by them from their tenants before bill filed or before notice."

The distinction which the learned Chancellor seems to draw between a case where the mortgagor retains the use and occupation of the mortgaged premises, and where the same are leased to a third person, is somewhat difficult to appreciate. It may be possible that he regarded the mortgagor *as out of possession* where the premises are leased to another; but if so, he was clearly in error, as it has been settled otherwise in the subsequent cases of *Laffan* v. *Kennedy*, 15 Rich., 246, and *Warren* v. *Raymond*, 12 S. C., 9. But whatever may have been the ground of the distinction, it is sufficient to know that the view we adopt in this case is fully supported by that case, as it is conceded that the mortgagor was in this case in the actual occupation of the mortgaged premises, and therefore not liable to account for rents in consequence of her own use and occupation.

It seems to us also that the case of *Reeder & Davis* v. *Dargan* (15 S. C., 175, *supra*), so far from containing any intimation to the contrary, as is contended by counsel for respondent, supports the view which we have adopted. See also the case of *Seignious* v. *Pate*, 32 S. C., 137, which, though decided upon another point, after alluding to the marked distinction between the nature and effect of a mortgage at common law and a similar instrument under our law, contains the following language, quite appropriate to our present inquiry: "Such being the well established character and legal effect of a mortgage in this State under the act *supra*, so long as the mortgagor remains in possession, it would seem to follow logically and necessarily that, in the absence of any pledge by the mortgagor in the mortgage of the rents and profits, they would belong to the mortgagor, with no claim whatever thereon by the mortgagee in advance of a foreclosure, previous to which the mortgagor would have the right to dispose of said rents as he chose. Otherwise the court would make the contract for the parties, instead of the parties themselves, if it assumed to turn over said rents and profits to the mortgagee in the absence of any stipulation to that end, or of any pledge thereof."

Applying these principles to the case in hand, it is quite clear that there was error in granting the order for the appointment of a receiver. So much of section 265 of the Code as applies to this case reads as follows: "A receiver may be pointed by a judge of the Circuit Court, either in or out of court, (1) before judgment on the application of either party, when he establishes an apparent right to property which is the subject of the action, and which is in the possession of an adverse party, and the property, or its rents and profits, are in danger of being lost or materially injured or impaired." Now, as we have seen, the mortgage gives to the mortgagee no real or even apparent right to the mortgaged premises, and certainly none whatever to the rents and profits thereof, and hence this provision of the Code did not warrant the appointment of a receiver. The mortgagor remaining the owner of the mortgaged premises until the sale thereof, was, of course, entitled as such to the rents and profits, and we are unable to perceive by what authority the property of one against whom no debt even has been established, can be seized and impounded, pending an effort on the part of an alleged creditor to establish a claim against the acknowledged owner of such property. Neither a copy of the complaint nor of the mortgage is set out in the "Case," and we only know the allegations of the one and the terms of the other from what is there stated. It does not appear that the mortgage contained any provision subjecting the rents and profits of the mortgaged premises to a lien to secure the payment of the mortgage debt, and no such allegation appears to be in the complaint, nor is there any allegation that the mortgagor has committed, or is even about to commit, any waste of the mortgaged premises, and hence we do not see that any case was stated in the complaint which would warrant the appointment of a receiver of the rents and profits.

While it is true, as urged by respondent's counsel, as the first preliminary objection alluded to above. that if there is not enough appearing in the "Case" to indicate error in the action of the court below, then the judgment of the court must be affirmed, yet the application which counsel proposes to make of this proposition in the present instance, to wit, that if the question turns upon the terms of the mortgage, and a copy

of the same is not incorporated in the "Case," then this court cannot undertake to say that there is any error in the judgment appealed from, cannot be approved. It was for the plaintiff to state and prove such a case as would entitle him to the relief demanded, and if in stating the terms of the mortgage, upon which his claim is based, he fails to show that the mortgage contained any stipulation subjecting the rents and profits of the mortgaged premises to a lien to secure the payment of the mortgage debt, then such omission is fatal to his claim to have a receiver appointed.

But again, while it is not stated distinctly in the "Case" that the order appointing a receiver was granted before any referee was appointed, or at least before any reference had been held, yet the inference is irresistible that such was the fact, and, if so, then clearly there was no authority for the granting of such an order; for until the reference was held, the parties were at issue as to all the allegations in the complaint, and the plaintiff had not then established any apparent right to any property whatever, and had not even established any claim against the defendant, as the affidavits used in support of the motion for the appointment of a receiver seem mainly intended to show the insolvency of the defendant and the insufficiency of the mortgaged premises to satisfy the mortgage debt. But we are not disposed to rest our conclusion upon this, and prefer to base it upon the broader ground stated above, that no case was stated warranting the appointment of a receiver.

It only remains to consider the exception to that portion of the judgment of his honor, Judge Wallace, which directed the receiver to pay over to the plaintiff such sum as he may collect as rents, after deducting his commissions, if the proceeds of the sale of the mortgaged premises should prove insufficient to satisfy the mortgage debt. Inasmuch as Judge Wallace had no authority to review the order of his predecessor, and was not at liberty to disregard the same, it cannot be said that there was any error on his part, *as the case was presented to him,* in inserting the provision complained of in his judgment of foreclosure ; for if there had been no error in granting the order for the appointment of a receiver, such provision

would legitimately have followed; but as it has now been ascertained that the order appointing the receiver was erroneous, the consequence flowing from it must also be so regarded.

The judgment of this court is, that the order of Judge Norton, and so much of the judgment of Judge Wallace as is appealed from, be reversed, and that the case be remanded to the Circuit Court for such further proceedings as may be necessary.