DETERMINED IN THE

## FOURTH DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1913.

Edgar M. Davis and Arthur J. Davis, Complainants, v. Alton, Jacksonville & Peoria Railway Company et al., Defendants.

Edward J. Scott et al., Intervenors, Appellants (Robert Curdie et al., Intervenors, Appellants), v. W. C. Fordyce et al., Intervenors, Appellees.

1. RECEIVERS—*appointment is ancillary remedy.* Under the general rule the appointment of receivers is an ancillary remedy in aid of the primary object of litigation between the parties, and such relief must be germane to the principal suit.

2. RECEIVERS—*where appointment of receiver is sole object.* A suit can not be maintained where the appointment of a receiver is the sole primary object and no cause of action or ground for equitable relief otherwise is stated.

3. JURISDICTION—*defined.* Jurisdiction is the power to hear and determine the subject-matter in controversy between the parties to a suit.

4. JURISDICTION—*defined.* Jurisdiction of the particular matter does not mean simple jurisdiction of the particular case then occupying the attention of the court but jurisdiction of the class of cases to which the particular case belongs.

5. RECEIVERS—*when mortgagee is entitled to.* A mortgagee may go into a court of equity, before the mortgage debt is due and ask for an injunction and receiver to prevent the subject-matter of his mortgage from being impaired or wasted.

(1)

6. APPEALS AND ERRORS—*when decree appointing a receiver is not open to collateral attack.* Where a court having jurisdiction of the parties and subject-matter, appoints a receiver upon a showing made by a mortgagee that it is for the best interest of all parties concerned, such a decree is not open to collateral attack, where an intervening petitioner, seeking to enforce a mechanic's lien, appeals from a later decree directing the issuance of receiver's certificates.

7. MORTGAGES—*allowing railroad mortgagees to borrow money.* The power of the courts ought never to be used in enabling railroad mortgagees to protect their securities by borrowing money to complete unfinished roads except under extraordinary circumstances.

8. RECEIVERS—*authority to issue receiver's certificates.* A receiver for a railroad may be authorized to issue receiver's certificates to pay for supplies, rentals and equipment necessary for the operation of the road, or to make repairs necessary to keep the road and its structures in a safe and proper condition to serve the public.

9. APPEALS AND ERRORS—*when decree authorizing receiver's certificates is reversed.* A decree authorizing a receiver to issue certificates to the amount of $150,000 to complete the construction of a railroad extending over twenty-two miles, six miles being completed and in operation, will be reversed where there are intervening petitioners having mechanics' liens to the amount of $80,000 which would have to be postponed until the certificates were paid.

Appeal from the Circuit Court of Madison county; the Hon. WILLIAM E. HADLEY, Judge, presiding. Heard in this court at the October term, 1912. Affirmed in part, reversed in part and remanded with directions. Opinion filed March 10, 1913.

KINEALY & KINEALY, J. J. BRENHOLT and C. H. BURTON, for appellants Edward J. Scott et al.

W. J. CHAPMAN, for appellants Robert Curdie et al.

FORDYCE, HOLLIDAY & WHITE and D. G. WILLIAMSON, for appellees.

J. V. E. MARSH, for Frank L. Butler, Receiver.

MR. PRESIDING JUSTICE MCBRIDE delivered the opinion of the court.

A decree was rendered herein in vacation authoriz-

ing the appointment of a receiver and afterwards a further decree was entered directing the issuance of receiver's certificates to the amount of $150,000, from the rendition of the latter decree the intervenors prosecute this appeal.

On September 18, 1911, Edgar M. Davis and Arthur J. Davis presented to the Honorable W. E. Hadley, in vacation, their bill of complaint in their own behalf and behalf of all others similarly situated who may hereafter desire to join herein against the Alton, Jacksonville & Peoria Ry. Co., the Alton Banking & Trust Co., trustees, and the unknown holders of the first mortgage bonds of said Railway Company; in which bill it is alleged that the said Railway Company is a corporation organized under the laws of the State of Illinois for the purpose of building a railroad from Alton to Jerseyville, Illinois; that for the purpose of raising money for the construction of said railroad the said Railway Company, under the authority of its stockholders and directors, issued its first mortgage five per cent. bonds aggregating six hundred thousand dollars, and to secure the payment of said bonds conveyed by deed of trust all of the property owned or controlled by it to the Alton Banking & Trust Company, trustee, for the purpose of securing said bond issue, and that said deed of trust was duly recorded. That a right of way was procured and a line of railroad from Alton to Godfrey, a distance of about five and a half miles, was actually constructed and the roadbed completed for the entire distance from Godfrey to Jerseyville and that ties and rails had been laid for a distance of about eleven and a half miles from Godfrey and that all overhead construction has been completed from Godfrey to Piasa Creek a distance of about six miles; that the whole of the issue of $600,000 has been sold or pledged to secure loans, proceeds of which have been spent in the construction of said line of railroad. That the said Railway Company has exhausted its means and credit and is unable to borrow any further sums

of money and has no means to complete the said line of railway and is unable to earn any money in excess of the actual cost of operating the line from Alton to Godfrey, and has no means with which to pay such indebtedness or the interest thereon, and that the said railroad in its unfinished and uncompleted condition is rapidly deteriorating; that by reason of the fact that the same is not completed there is constant waste and loss to the defendant Railway Company and complainants on that portion of the road completed, as well as the equipment and materials on hand and available for the completion of said road to Jerseyville; that the records of the defendant Railway Company, including stock books and minute book have been removed from the State of Illinois by one Carey N. Weisiger who claims to be President of said Company but avers that he was never legally elected as such President. That he is not making any effort to complete the said railroad but is preventing others from doing the same and refuses to surrender said books to the Railway Company or to do anything to preserve or protect the property of the said Railway Company. That the indebtedness represented by the notes of the said Railway Company is in excess of $327,000, besides open accounts to the amount of $32,000, or more, and that suit has been instituted against it on account of a note now past due, and other suits are threatened. That the said Railway Company is insolvent, the property is rapidly deteriorating in value and that the creditors and bondholders would sustain great loss on account of such deterioration of said railroad unless steps are immediately taken to preserve the same; that under the present condition its property and interest are being wholly neglected and nothing being done to preserve or conserve the same. That complainants are the owners of 3,444 shares out of the total issue of 5,160 shares of its stock and are the owners of bonds aggregating the par value of more than $200,000 and

are individual creditors to the amount of $8,000 and that they, with other stockholders, bondholders and creditors are in danger of losing large amounts of money, and the assets of the Company wasted and rendered worthless and that they will be irreparably injured and damaged unless aid of this court of equity be granted to them. The bill prays for the appointment of a receiver to preserve and conserve the property and assets of the Railway Company, and to immediately take charge thereof, to care for and conduct the business of said Railway Company for the benefit of all parties concerned.

On September 19, 1911, Judge W. E. Hadley, in vacation, after the defendant Railway Company and the Alton Banking & Trust Company, respectively, had entered their appearance and waived the issuance of process, considered said petition and appointed Frank L. Butler, of the city of Alton, receiver of said Railway Company, and fixed his bond at $25,000, which was by him approved and ordered that the defendant Railway Company without delay turn over and place in the hands and possession of said receiver all the property of said Railway Company, including its line of railroad, right of way, railroad tracks, rails, ties, side tracks, moneys and all other property connected with or in any way pertaining to said railroad, and enjoined the said Railway Company from selling, assigning, mortgaging or in any way disposing of or doing anything to affect the value of any of said property, and vesting the said receiver with full power and authority over said property, directing him to carry on its business and take charge of the income and make contracts; in general do all things necessary and requisite in and about the managing, controlling and operation of said business, subject, however, to the direction of the court.

On November 6, 1911, the intervenors, Edward J. Scott et al. and Robert Curdie et al., presented to the

Circuit Court of Madison county a petition asking leave to sue the receiver of the defendant Railway Company, which was denied, but the said parties were granted leave to file herein intervening petitions in the nature of bills to enforce mechanic's liens.

On November 10, 1911, the intervenors aforesaid, respectively, filed bills in the Circuit Court of Madison county in the said cause, each alleging that under a contract made with the defendant Railway Company they had performed certain work and furnished certain material in the construction of said railroad. The intervenors, Edward J. Scott et al. alleging that there was due to them $10,200.78, and that there was due to the intervenors Grommet & Johnson $40,107.49 for work done in surfacing the roadbed, laying the track, steel, erecting trolley feed and telephone wires, and the fencing of the right of way, etc. Each of said intervenors alleging that under the laws of the State of Illinois they were entitled to a lien upon said railroad prior to the lien of the said bondholders and of all other persons, for the amount due to each of them respectively and asked that the property of the said Railway Company be sold to satisfy such liens. That afterwards on March 7, 1912, and during the March Term of the Madison county Circuit Court, a decree was entered in such court reciting the substance of the former order appointing the receiver in vacation, finding that the appointment of such receiver was necessary and proper to preserve the property of said Railway Company for the benefit of the persons interested therein, and that such facts were admitted by the answers filed as aforesaid and decreeing that the above mentioned order and decree entered on September 18, 1911, is hereby in all things approved and confirmed and directing the said Frank L. Butler to continue as such receiver, requiring him to file a report herein on or before April 15th next, showing the receipts and disbursements, condition of the property, together with

such other information as is necessary to advise the court of the condition of the business of the defendant Railway Company, and providing for exceptions to be filed to such report and appointing a special master to hear testimony and report conclusions with reference to such exceptions. Also providing that any party competent to maintain a bill for foreclosure of the mortgage be permitted to intervene by petition or otherwise for such foreclosure, and ordering that all issues arising in this cause, including the several intervening petitions and answers thereto, shall, when properly at issue, be referred to the special master to take testimony and report conclusions of law and facts.

On May 16, 1912, W. C. Fordyce, George L. Edwards, J. C. Van Riper, C. A. Caldwell and John J. Cummings constituting a bondholders committee for the owners of such bonds, filed a petition herein representing that as such committee they are the legal holders and owners of $551,000 face value of the entire issue of $600,000 of said bonds, and representing that at the time the receiver was appointed herein five and a half miles of the said railroad had been built from its terminus at Alton to the town of Godfrey and the cars thereon were then in operation; that the .grade had been completed and culverts and bridges built and the roadbed completed and ready to receive the rails and ties on the road from Godfrey to the city of Jersey-ville, and that such rails and ties had been laid from Godfrey for a distance of about five miles; that the overhead construction consisting of trolley poles, trolley wires and feed wires, etc., had been erected for a distance of about six miles beyond Godfrey; that a large amount of material consisting of copper wire, ties, poles, steel wires, and other material is now on hand, in the possession of the receiver, available for the further construction of said road and that such material was of the total value of about $80,000; that the Railway Company had acquired and owned the

right of way from Alton to Jerseyville; that taxes on said railway property, payable in 1912, amounting to $1,000 had not been paid, and while the revenue received from the railroad was sufficient to pay the operating expenses it was insufficient to pay the taxes and that the material on hand was rapidly deteriorating and ought to be used at once in the completion of the road in the interests of all concerned; that the roadbed and embankment of the Company are washing away and the rails, so far as laid, are becoming service bent and continual damages and deterioration of said railroad and said material is in progress. That the point to which said railroad had been completed is not near any village or city and not a terminal point of any value to said road, and asking that an order be entered authorizing the receiver to complete and equip the said railroad from the town of Godfrey to the city of Jerseyville and for that purpose to issue receiver's certificates in an amount not to exceed $150,000 and asks that all the defendants and intervening petitioners be required to answer this petition and asks that such receiver be authorized to enter into a contract for the completion and equipment of such road.

On May 30, 1912, the intervenors, Edward J. Scott et al., Robert Curdie et al., W. C. Fordyce et al., respectively, filed answers to such petition denying many of the material allegations of said petition and averring that the said W. C. Fordyce et al., were guilty of laches in failing to take any steps or proceedings for the protection of their rights under the said deed of trust, and averring that to enforce such petition would be unjust and oppressive and violative of the rights of these intervenors who have mechanic's liens upon said property which are under the statute of the state of Illinois, and under the principles of equity a first and prior lien on all of the property of said Railway Company, which such intervenors are with all due diligence attempting to enforce by the petitions heretofore filed

herein, and that the certificates which the receiver might be authorized to issue would be null and void because the original bill filed is wholly wanting in equity and insufficient to warrant the appointment of a receiver by this court, and that such appointment was ill-advised and wholly void; and denies the right of the court to authorize the issuing of such certificates and the making of them a prior lien to the rights of the intervenors upon such property; and deny that the revenue derived from the operation of such railroad is insufficient to pay the operation of said road and the taxes, and deny that the material on hand is deteriorating and deny that it is to the best interest of all concerned or that it is necessary to prevent damage and loss to the bondholders and lien complainants that such receiver be authorized to complete and equip said road.

The court heard the testimony of witnesses upon this petition, and the answers filed thereto, and thereafter on July 9, 1912, rendered an interlocutory decree wherein it is determined by the court that the allegations of the intervening petition of W. C. Fordyce et al. are substantially true, and that the relief prayed for therein should be granted, and that they represent substantially ninety-five per cent. of all outstanding bonds; that work had been done upon said road and material on hand to be used in the completion of such railroad to the value of about $80,000 and that such materials are deteriorating in value and unless made use of immediately will further depreciate and that it is to the best interest of all concerned and for the preservation of the property now in the possession of the receiver, and for the preservation of its business and good will that such receiver redeem the property from the tax sale and proceed without delay and with all convenient speed to construct and complete the unconstructed portion of said railroad from the town of Godfrey to the city of Jerseyville and to put such portions as are partly constructed in good order and equip the

same so that it may be operated as a railroad, and to do all other things which may be necessary and proper to consummate such purpose, and for such purpose, and for the liquidation of all necessary operating expenses receiver's certificates were authorized to an amount not to exceed $150,000 in denomination of $1,000 each, and to bear interest at six per cent. per annum, and that such certificates be made a first and valid lien upon all the property of every nature and description of the said Railway Company, and the earnings after deducting operating expenses. Said receiver was authorized to sell said certificates from time to time as was needed at not less than ninety cents on the dollar of the par value thereof, and were made a paramount lien on all of the property of the defendant Railway Company and were to be prior to all other liens or claims thereon whatsoever, subject only to the operative expenses of said Railway Company.

It was further provided by such decree that such certificates are issued upon the condition that under any judicial sale to enforce liens of said certificates or to enforce the liens on the bonds of the petitioners or any liens, and to the end that sufficient money shall be realized for the payment of operating expenses, and all such claims as may be finally adjudicated to be a lien or liens superior to the bonds aforesaid, that any decree providing for the sale of said property shall provide for an up-set price and that no bid for said property shall be accepted unless the same is of sufficient amount to pay all outstanding receiver's certificates and interest, cost of sale, operating expenses, expenses of the receivership and all such claims, together with interest as may be finally adjudicated to be liens prior to the bonds of said Railway Company, and that all questions as to the priority of liens or the amounts thereof be reserved until the final hearing of this case. That such receiver was authorized to use the proceeds of the sale of such certificates, or so much thereof as was necessary for the redemption of the

property from the tax sale and to complete said railroad, to the rendition of which decree the intervenors, appellants here, excepted and prayed an appeal.

The evidence taken by the court upon the hearing of the application of Fordyce et al. for the issuing of receiver's certificates and the answers filed thereto shows that the road was projected to run from the city of Alton through Godfrey to the city of Jerseyville, being a distance of about twenty-three miles, and was completed from Alton and in operation for the distance of about six miles, being about one mile from Godfrey. That the rails and ties were laid for a distance of about eleven miles between Godfrey and Jerseyville and poles erected for the distance of about seven miles and the trolley wires, feed wires and telephone wires for the distance of about five miles but not completed. The grading and bridges had been completed and a portion of the fencing done, about one-fourth of a mile of track laid in the city of Jerseyville. That all of the timber, bridges and culverts are completed ready to receive the ties and rails; that from the terminus of the present track to Jerseyville is about five and a half to six miles; that the graded portion of the roadbed is considerably washed and the bridges along the road are practically all filled causing the tracks to overflow; that the alignment was bad, there had been a general depreciation in the overhead construction, trolley wire broken in two places and the feed wire in three; that the revenue under the receivership has been barely sufficient to enable the receiver to gather the material together and store it so as to prevent it from being stolen; that to complete and equip the road a substation will have to be erected and a subway under the C. P. & St. L. road and that four passenger cars and one express car will have to be purchased; that it will require from $70,000 to $90,000 to complete the road and put it in operation without any ballast except earth, depending to some extent upon the kind of cars and other equipment procured.

It further appears that intervening petitions filed, by those claiming to have liens upon the property under the statute, amount to from $50,000 to $80,000.

The errors assigned by appellants, are, that the court erred in entering the decree of July 9, 1912, and that such decree is illegal and the court was without jurisdiction to enter it.

Second. That the court erred in granting the prayer of the petition of W. C. Fordyce et al. and in authorizing the receiver's certificates for the purposes and in the amount and terms set out in the decree.

Under the first error assigned it is claimed by appellants that a suit cannot be maintained where the appointment of a receiver is the sole primary object of the suit and where no cause of action or ground for equitable relief otherwise is stated. That the appointment of a receiver can be ancillary only and in aid of some primary object of litigation between the parties. Many authorities have been cited upon this proposition which seem, as a general rule, to sustain the contention of appellants but the principal cases referred to and argued were cases in which the bondholders sought by a proceeding of this kind to obtain possession of the property for the purpose of preventing creditors, without liens, bringing suits against such property and of obtaining satisfaction for their claims, and while we believe from the authorities cited, ''That the general rule is, that the appointment of receivers is an ancillary remedy in aid of the primary object of litigation between the parties, and such relief must be germane to the principal suit; and a suit cannot be maintained under this general rule where the appointment of a receiver is the sole primary object of the suit and no cause of action or ground for equitable relief otherwise is stated.'' Cyc. vol. 34, p. 29. But to this rule there are some well recognized exceptions which may arise under some peculiar circumstances that will justify a court of chancery in the taking hold of property, even for its preservation for

Davis v. Jacksonville & P. Ry. Co., 180 Ill. App. 1.

the benefit of the lien holders and other creditors, and we think it has been well said, "The general rule, however, is subject to exceptions, some of which seem well defined while others amount to a repudiation of the rule itself under the particular circumstances and create a practical conflict of authority. And so it has been held that while, as a rule, a mortgagee cannot ask relief until his mortgage debt is due, nevertheless he may come into a court of equity before that time and ask for an injunction and receiver to prevent the subject-matter of his mortgage from being impaired or wasted." Cyc. vol. 34, p. 31. And this exception has been followed in many cases, notably the case of Rutherford v. Pennsylvania Midland R. Co., 178 Pa. St. 38, and many of the decisions of the federal courts to which we have been referred. At all events, the weight of authority seems to be that if such a showing is made by a lien holder or other interested person as convinces the court, to whom application is made, that it is in the interest of all persons concerned to appoint a receiver then he has jurisdiction to act, and while the circumstances might not warrant the appointment yet if the order is erroneously made it would be valid until reversed and would not be void and could not be attacked except by direct appeal to reverse such erroneous order. If the court has jurisdiction of the subject-matter and of the parties nothing further is required. The cause of action may be defectively stated but that does not destroy the jurisdiction. Jurisdiction is the power to hear and determine the subject-matter in controversy between the parties to a suit. If the law confers the power to render a judgment or decree then the court has jurisdiction. "Jurisdiction of the particular matter does not mean simple jurisdiction of the particular case then occupying the attention of the court, but jurisdiction of the class of cases to which the particular case belongs." O'Brien v. People, 216 Ill. 363. We are of the opinion that the

case presented by the petition for the appointment of a receiver was of that class, that, if the circumstances and conditions were of a character to warrant it, the court had the power to appoint a receiver to prevent the subject-matter of the mortgage under which the petitioners were claiming from being impaired or wasted and that as this order was not appealed from or in any manner questioned, except collaterally, that it would be binding upon the parties until set aside and could be used as a basis for the entering of an order directing such receiver to issue receiver's certificates if the facts and circumstances warranted it.

The next error assigned by appellants challenges the right of the court to issue receiver's certificates for the purposes and in the amount and terms set out in the decree of July 9, 1912. This we regard as the most serious question in the case. It is insisted, and is probably true, that under proper circumstances the court has the power to issue receiver's certificates for the purpose of making repairs, buying rolling stock, complete an unfinished road and build a bridge and that to issue certificates for such purposes would not be an abuse of the discretion vested in the court, but the question here is not the right to do any one or more of these things or to do some slight work or expend a comparatively small amount in improvements but it is sought to expend large sums of money in improvements and to extend the operation of a railroad from the territory of about six miles over a territory of twenty-two miles, and to do this it becomes necessary to build a substation together with all of the necessary attachments thereto for the purpose of conducting the power to other parts of the road, also to build a subway under another railroad, to buy at least a portion of the rails for the purpose of completing the road, to buy the necessary cars for the purpose of equipping the road and to establish proper and suitable terminal stations, and in fact to expend a very large amount of money considering the character

and length of the road sought to be constructed. It appears that bonds were issued, secured by trust deed upon defendant's railway property, to the amount of $600,000 but that as such bonds were pledged for loans the indebtedness is about $327,000 that is secured by the bonds, as we understand the pleadings in this case, and now it is sought by this proceeding to place a further incumbrance that may extend to $150,000 upon this property that will have to be paid before the men who furnished the material and labor upon the road can receive any compensation for their services. If the amount here represented to have been actually expended upon the road represents or begins to represent its true value then it looks to us as if it would be unjust to require the interpleaders who claim to have first liens upon the property to be further postponed in the collection of their debt. The evidence shows the interpleaders' claims or material men's liens, as claimed, to be from $50,000 to $80,000; now if they are in fact prior to the bonds secured by the trust deed then by the payment of $50,000 to $80,000, with the expense attending the collection, they would be able to protect themselves but if it is permitted to increase the lien, prior to them, then it would take from $200,000 to $230,000 to protect them. The complainants in the original petition are stockholders to a large amount, and bondholders as they aver to an amount of over $200,000 but it does not appear from the record in this case as to whether the remaining bondholders are stockholders or not, but as the complainants are stockholders they doubtless invested in this enterprise for the purpose of gain and having failed to complete the road with the amount of bonds they caused to be issued, and having made contracts with these interpleaders to perform the work and furnish the material that has been put in the road we cannot see that it would be just and equitable to allow them to postpone the payment of the appellants' claims to another lien that would, as we view it, inure to the benefit of the bond-

holders but not to the benefit of the material men. It seems from the pleadings herein that the complainants as bondholders, the defendant and the committee representing ninety-five per cent. of the bondholders are all consenting that receiver's certificates may be issued to the full amount of $150,000, if required, because, as we view it, it would inure to the benefit of all the bondholders but to the detriment of the people who furnished the material and labor to construct the road. As before stated, it may be that the courts in extreme cases may issue receiver's certificates for such purposes but it is said by the Supreme Court of the United States in the case of *Shaw v. Little Rock & Ft. S. R. Co.*, 100 U. S. 605: "The power of the courts ought never to be used in enabling railroad mortgagees to protect their securities by borrowing money to complete unfinished roads, except under extraordinary circumstances. It is always better to do what was done here whenever it can be; that is to say, reorganize the enterprise on the basis of existing mortgages as stock, or something which is equivalent, and by a new mortgage, with a lien superior to the old, raise the money which is required without asking the courts to engage in the business of railroad building." This would result in casting the burden of carrying this enterprise upon the men who are now the owners of the present bonds, and, as we believe from this record, the principal stockholders. The power to postpone existing liens to liens created by the court for the purpose of completing an unfinished railroad has rarely been exercised and ought not to be exerted unless it can be done without ultimate loss to the existing lien holders; it is to be exercised with great caution and, if possible, with the consent or acquiescence of all the parties in interest. It is said, "A practice grown up incident to railroad receiverships which has become firmly established by judicial sanction, whereby the receiver may be authorized to issue receiver's certificates for the purpose of paying the incidental and necessary expenses for

carrying forward the business of the corporation so that it may continue a going concern and thereby to supplant or supersede prior liens, and such an order may bind the parties even though entered without their consent. There is no fixed and inflexible rule defining the precise purposes in all cases for which such certificates may be issued, and while some courts have discouraged the practice, except when absolutely necessary for the preservation of the property as a going concern pending litigation, the propriety of the issuing of such certificates is recognized where the purpose is to pay for supplies, rentals and equipment necessary for the operation of the road, or to make repairs necessary to keep the road and its structures in a safe and proper condition to serve the public. But the primary object of the receivership being to preserve the property some courts have refused to exercise power for the purpose of completing the construction of an unfinished road, or the making of permanent improvements not absolutely necessary to preserve the property; while on the other hand, power of the court has been recognized and exercised for such purpose." Cyc. vol. 34, p. 297.

The object of the law in giving unto contractors a lien upon the railroad for the material and labor furnished in constructing the road was designed doubtless for the protection of men who were limited in their means, had nothing to gain by the enterprise, were not engaged in a speculation but were entitled to be paid for the labor performed and the material furnished. If the appellants are justly entitled to their lien, under the statute and decisions of the courts, then we believe it is manifestly unjust to permit such liens to be swept away by a large class of bondholders who are seeking to protect themselves, even at the expense of such lien holders, and we believe that it was error for the court to undertake to complete this road under the circumstances and issue receiver's certificates making them a lien prior to the liens of the appellants.

So much of said decree as provides for issuing receiver's certificates and making the same a lien prior to the claims of the intervening material men or others having liens under the statute, is reversed and in all other respects the decree is affirmed, and the cause remanded for further proceedings in conformity with this opinion.

*Affirmed in part, reversed in part and remanded.*