## COLUMBIA TRUST CO. v. FARMERS' & MERCHANTS' BANK et al.

No. 4903. Decided May 23, 1933. (22 P. [2d] 164)

*C. D. Moore,* of Salt Lake City, for appellant.

*Robinson & Robinson,* of Provo, for respondents.

ELIAS HANSEN, Justice.

Plaintiff brought this action to recover for the alleged conversion by the defendants of the crops which were grown on the farm of W. H. Homer, Jr., during the year 1927. Homer's premises are situated near Pleasant Grove, in Utah county, Utah. The crops involved consisted of alfalfa hay, apples, peaches, apricots, pears, plums, potatoes, and grain. Defendants denied the conversion. A trial was had before the court sitting without a jury resulting in a judgment in favor of the defendants. Plaintiff prosecutes this appeal. It contends that the evidence received at the trial was such as to entitle it to a judgment. The following facts are established by the evidence which is remarkably free from conflict: On May 31, 1921, W. H. Homer, Jr., and his wife, Philena F. Homer, executed and delivered to the defendant

Farmers' & Merchants' Bank a real estate mortgage upon the premises of Mr. Homer as security for the payment of a note in the sum of $10,000. The mortgage contained a provision that if the "property is left vacant said mortgagee, its successors or assigns, are authorized to occupy the same to keep the insurance valid and prevent damage to the property." The mortgage was recorded on June 2, 1921, in the office of the county recorder of Utah county, Utah.

On May 13, 1926, W. H. Homer, Jr., and his wife, Philena F. Homer, executed and delivered to the Columbia Trust Company, plaintiff herein, a crop mortgage on "all their crop which is now growing and any crop which may be hereafter grown (on the premises covered by the real estate mortgage in favor of defendant Farmers' & Merchants' Bank) until the debt secured by this mortgage is fully paid." The crop mortgage provided that the mortgagors would properly care for and protect the crop until the same was ready for harvest, and then harvest and deliver the same to the mortgagee, and that if the mortgagors failed to properly care for the crop the mortgagee was "empowered to enter upon the premises * * * and to take possession of said crop, and to take such measures as it may deem necessary for the care, protection, harvesting, or marketing thereof." The crop mortgage was given as security for the payment by the mortgagors to the mortgagee of a promissory note in the sum of $3,450. Plaintiff's crop mortgage was filed for record in the office of the county recorder of Utah county, Utah, on May 27, 1926. During the year 1926 the sum of $750 was paid on the note secured by the chattel mortgage. No other payments were made thereon. On December 17, 1926, defendant Farmers' & Merchants' Bank brought suit in the district court of Utah county, Utah, to foreclose its mortgage on the Homer property. The Columbia Trust Company, plaintiff herein, was not made a party to that suit and so far as appears neither of the defendants herein had any actual knowledge of the crop mortgage held by the plaintiff herein. Under date of March 28, 1927, W.

H. Homer, Jr., filed (in the cause whereby the Farmers' & Merchants' Bank was seeking to foreclose its mortgage upon the premises of Mr. Homer) a petition requesting that the court appoint a receiver to take charge of the crop to be grown upon that property during the season of 1927. The petition recited that the petitioner was the legal owner of the property covered by the mortgage of the Farmers' & Merchants' Bank; that he was not residing thereon and was unable to care for the same during the season of 1927; that there was about 65 acres of the premises planted to hay and a similar area planted to orchard; and that the orchard and hay needed immediate care and attention. The petitioner suggested that H. A. Dixon, one of the defendants herein, be appointed such receiver. On March 29, 1927, a decree of foreclosure was made and entered in the mortgage foreclosure suit theretofore brought by the Farmers' & Merchants' Bank. On April 12, 1927, the court made and entered an order appointing H. A. Dixon receiver of the Homer property with authority to care for and market the crop to be grown thereon during the year 1927. On April 27, 1927, the Homer property was sold by the sheriff of Utah county pursuant to the decree of foreclosure. The Farmers' & Merchants' Bank was the purchaser at the sheriff's sale for the sum of $12,477, the same being the amount of their mortgage and the cost of the foreclosure proceedings. In the summer of 1927 the Farmers' & Merchants' Bank entered into a contract with two brothers by the name of Taylor for the sale of the Homer property for the sum of $23,000. The contract of sale was to be effective only on condition that the property was not redeemed. Nothing was paid on the contract. It was later canceled, apparently because within the period allowed by law for redemption the property was redeemed by the Columbia Trust Company, plaintiff herein, on account of a judgment in its favor against W. H. Homer.

It further appears from the evidence that H. A. Dixon consented to act as receiver of the property involved at the

solicitation of Mr. Homer and a Mr. Beesley who held a second real estate mortgage on the property. Mr. Dixon testified that at the time he was appointed receiver he was the managing officer of the defendant Farmers' & Merchants' Bank; that Mr. Homer stated that he was without means to operate the farm; that he hoped to be able to redeem the farm within the time allowed by law; and that he (Mr. Dixon as receiver) was trying to protect the interest of Mr. Homer, of his bank, and of Mr. Beesley. Prior to the time Mr. Dixon was appointed receiver, the sap began to flow in the fruit trees and the alfalfa began to grow.

As soon as Mr. Dixon was appointed receiver he made arrangements to care for the property here involved. He borrowed $3,000 from the Farmers' & Merchants' Bank. He purchased from Mr. Homer horses and farming inplements and paid therefor the sum of $500. He employed a Mr. Porter at a salary of $100 per month to operate the farm. The house on the farm was painted and repaired. Mr. Porter and his family moved into the house. Some of the water right which had been used to irrigate the farm had been sold under a mortgage foreclosure. Mr. Dixon rented water to replace that which had been sold. The orchard had not been pruned for several years. It was pruned under the direction of Mr. Dixon and the limbs which were pruned from the trees were removed. The alfalfa land was marked off so that it could be properly irrigated. Some of the land was plowed and planted to grain and potatoes. During the summer the fruit trees were sprayed six times, the fruit was thinned, and in due time marketed; the farm was irrigated; the hay and grain harvested and marketed. After the season's operations were finished the horses and farming implements were sold for $500, which was the amount paid for them. At the trial Mr. Dixon gave a detailed account, supported by vouchers, of the money which he had received and expended in the operation of the property. The account showed that he had received $6,910.23, all of which was expended in his operations of the farm. The

receipts from the crop were insufficient to fully pay all the expenditures. After paying all of the expenses and applying the amount available to the $3,000 note which Mr. Dixon gave the Farmers' & Merchants' Bank, there remained unpaid on that note the sum of $356.49.

No claim is made by appellant that the account rendered by Mr. Dixon was inaccurate or that the expenditures made by him were excessive. It is urged that in no event were the costs of insuring and repairing the improvements on the premises a proper charge against the crop grown thereon. It is unnecessary to discuss that phase of the case, because the money expended for insurance and repairing the improvements was considerably less than the amount remaining unpaid on the $3,000 note. Thus, even though the costs of those two items be disallowed, there was more money expended in the farming operations than was received from the crop raised. It is also suggested that the purchase of the horses and farming implements was an improper expenditure by the receiver, but as they were resold for the same price as was paid for them and the amount so received accounted for, nothing was lost and probably considerably saved by that transaction.

Plaintiff contends that it is entitled to have sufficient of the money realized from the sale of the crops applied to the payment of the amount owing upon its note and mortgage without regard to the costs of producing the crop. Respondents contend to the contrary. That is the ultimate question upon which the parties divide. In support of its position plaintiff urges: First, that the order of the court below appointing Mr. Dixon as receiver was void and as such subject to attack in this proceeding; and, second, that the delivery of the chattel or crop mortgage constituted a constructive severance of the crop, and vested in plaintiff a first lien upon such crop which lien continued during the period allowed by law for the redemption of the property, and until the issuance of a sheriff's deed. In support of its contention that the appointment of Mr. Dixon as

a receiver was void, appellant cites the following cases: *State* v. *Ross,* 122 Mo. 435, 25 S. W. 947, 23 L. R. A. 534; *Zuber* v. *Micmac Gold Mining Co.* (C. C.) 180 F. 625; *Hermann* v. *Thomas* (Tex. Civ. App.) 143 S. W. 195; *Continental Trust Co.* v. *Brown* (Tex. Civ. App.) 179 S. W. 939; *Hartnett* v. *St. Louis Min. & Mill. Co.,* 51 Mont. 395, 153 P. 437; *Price* v. *Bankers' Trust Co.* (Mo. Sup.) 178 S. W. 745; *Stockholders of Jefferson County Agricultural Ass'n* v. *Jefferson Agricultural Ass'n,* 155 Iowa 634, 136 N. W. 672; *Gauer* v. *Voltz,* 190 Ill. App. 189; and *Davis* v. *Alton, J. & P. Ry. Co.,* 180 Ill. App. 1. The doctrine announced in the foregoing cases is thus stated in Pomeroy's Equity Jurisprudence, vol. 4 (4th Ed.) § 1539, p. 3613:

"Unless authorized by statute, there is no such thing as an action brought distinctively for the mere appointment of a receiver; to justify the appointment it is essential that some proper final relief in equity be asked for in the bill which will justify the court in proceeding with the case. It follows that it is error for the court to appoint a receiver of a corporation on its own petition, alleging its insolvency, and it has been held that such a proceeding is void for want of jurisdiction."

The only pleading filed to invoke the jurisdiction of the court below to appoint a receiver was the petition of Mr. Homer. That petition did not justify the appointment of a receiver.

In support of the claim that plaintiff's chattel or crop mortgage was a lien upon the crop grown upon the Homer property during the year 1927, and that the real estate mortgage of the Farmers' & Merchants' Bank was not such lien, appellant cites and relies upon the following cases: *Farmers' Bank of Mt. Vernon* v. *Parker,* 215 Mo. App. 96, 245 S. W. 586; *Whiteside* v. *Morris,* 197 Iowa 211, 197 N. W. 56; *Morton* v. *Union Central Life Ins. Co.,* 80 Mont. 593, 261 P. 278; *Caldwell* v. *Alsop,* 48 Kan. 571, 29 P. 1150, 17 L. R. A. 782; *First National Bank* v. *Beegle,* 52 Kan. 709, 35 P. 814, 39 Am. St. Rep. 365; *Simpson* v. *Ferguson,* 112 Cal. 180, 40 P. 104, 44 P. 484, 53 Am. St. Rep. 201; *West Springfield Trust Co.* v. *Hinckley,* 258

Mass. 157, 154 N. E. 580; *Lombardi* v. *Shero,* 14 Tex. Civ. App. 594, 37 S. W. 613, 971; *Commonwealth* v. *Galatta,* 228 Mass. 308, 117 N. E. 343; *Moncrieff* v. *Hare,* 38 Colo. 221, 87 P. 1082, 7 L. R. A. (N. S.) 1001; *White* v. *Pulley* (C. C.) 27 F. 436; *Willis* v. *Moore,* 59 Tex. 628, 46 Am. Rep. 284; *More* v. *Lane,* 37 N. D. 536, 164 N. W. 292; *Guy* v. *Ide,* 6 Cal. 99, 65 Am. Dec. 490; *American Investment Co.* v. *Farrar,* 87 Iowa 437, 54 N. W. 361; *Best* v. *Schermier,* 6 N. J. Eq. 154; *Hardin* v. *Hardin,* 34 S. C. 77, 12 S. E. 936, 27 Am. St. Rep. 786; *Greenwood Loan & Guarantee Ass'n* v. *Childs,* 67 S. C. 251, 45 S. E. 167; *Norfor* v. *Busby,* 19 Wash. 450, 53 P. 715; *Balfour-Guthrie Inv. Co.* v. *Geiger,* 20 Wash. 579, 56 P. 370. The foregoing cases are in the main authority for the doctrine that a real estate mortgage does not give the mortgagee a lien upon the crops grown upon the mortgaged premises prior to the issuance of a sheriff's deed. If Mr. Homer had remained in possession of the premises here involved and had cared for and harvested the crops during the year 1927, plaintiff's right to the crops or the proceeds thereof for that year would, according to the cases last above cited, have been prior and superior to any claim founded upon the real estate mortgage of the Farmers' & Merchants' Bank. In this case, however, Mr. Homer did not remain in possession of the mortgaged permises. He did nothing and was financially unable to do anything towards caring for the crops. The evidence is all to the effect that nothing would have been realized from the crops except for the labor and expenditure in caring for the same. Assuming therefore that plaintiff's mortgage was a first lien on the crops in question, and assuming further that the appointment of Mr. Dixon as receiver was void, it still remains to be determined whether plaintiff's lien is superior to the right of the defendants to be reimbursed out of the proceeds of the crops for the labor and money expended in caring for and marketing such crops. Plaintiff takes the position that the priority of its lien was not affected by the fact that the crops were rendered valuable by the labor and money expended by Mr.

Dixon as nominal receiver of the Homer property. We are not impressed with the soundness of such view and none of the cases or authorities cited by appellant support its position in such respect. Plaintiff's action is for the conversion of the crop. It is familar doctrine that in an action for conversion the measure of damages is the value of the property at the time and place of the conversion. In the case of *Madsen* v. *Madsen,* 72 Utah 96, 269 P. 132, 134, it is said:

"A conversion of personal property is defined as an   *   *   *   exercise of the right of ownership over goods or personal chattels of another to the alteration of their condition or the exclusion of the owner's rights, and 'trover' is the technical name of the common-law action provided for the redress thereof (38 Cyc. 2005), and the measure of damages for conversion when property is not returned is the value of the property at the time of the conversion, plus interest."

The apparent position of plaintiff is that the conversion relied upon by it occurred either at the time the crops were sold or when the proceeds derived from the sale of the crops were applied to purposes other than to the payment of the amount owing upon the plaintiff's note and mortgage. Upon this record we doubt the soundness of that position. As soon as Mr. Dixon assumed the management of the Homer property, he exercised dominion over the crops growing thereon to the exclusion of the claimed rights of the plaintiff under its chattel mortgage. Not long after his appointment, the exact date not appearing, Mr. Dixon entered into a contract for the sale of the fruit crop. It is clear that at the time Mr. Dixon assumed the management of the Homer property he intended to use the proceeds from the crops to pay the expenses of operating the farm. If, therefore, Mr. Dixon is to be charged with the conversion of the crops in question, it would seem that he should be charged with such conversion as of the date when he assumed the management of the Homer property rather than with the conversion as of the time the crops were marketed. If the conversion occurred at the time Mr. Dixon assumed the management of the property, plaintiff would not have been entitled to

more than nominal damages. There is no evidence that the crops were of any value at the time Mr. Dixon assumed the management of the property. The fact that the expenses of caring for and marketing the crops were more than was realized from the sale thereof tends to show that the crops were of no value independent of the expenses of caring for and marketing them.

The facts in this case, however, do not in our opinion justify a finding that the crops in question were converted by Mr. Dixon. The real estate mortgage which was held by the Farmers' & Merchants' Bank gave it the right to occupy the premises and prevent damage thereto in the event they were left vacant by the mortgagor. Plaintiff was granted a similar right under its crop mortgage. The property having been left vacant by the mortgagor and he being financially unable to care for the property or the crops to be grown thereon, the defendant Farmers' & Merchants' Bank and the Columbia Trust Company were by the terms of their respective mortgages authorized to take possession of and operate the farm. They had a common interest in having the property cared for. The fruit trees and the alfalfa roots were a part of the property covered by the real estate mortgage held by the defendant bank. If the fruit trees had not been properly pruned and sprayed or if they and the alfalfa had not been irrigated during the year 1927, the premises would have been irreparably injured and the security of the bank depreciated in value. And, likewise, the pruning, spraying, and irrigation of the fruit trees, as well as the irrigation of the alfalfa, was necessary for the production of the crop. We need not concern ourselves with the grain and potatoes because they were planted by Mr. Dixon after he assumed the management of the farm and therefore those crops were not covered by plaintiff's mortgage.

The law is well established that one tenant in common of real or personal property is entitled to contribution for ex-

penditures which were necessary for the preservation of the common property. 38 Cyc. 54. While the Farmers' & Merchants' Bank, Mr. Beesley, and the Columbia Trust Company were probably not technically tenants in common of the crops raised upon the Homer premises during the year 1927, yet their interests in the premises were such as to require the proper care and attention of the fruit trees and alfalfa. The farming operations which preserved the interests of one preserved the interests of all. The same reason which permit a tenant to enforce contribution from his cotenant for expenses which are necessary to conserve the common property apply to the parties to this controversy. They had a common interest which could be preserved only by the expenditure of labor and money in caring for the fruit trees and the alfalfa plants.

It is likewise well-established doctrine that a mortgagee in lawful possession of the mortgaged premises is entitled to be credited in his account with the costs of all reasonable disbursements and expenses necessary for their proper management and protection. Pomeroy's Equity Jurisprudence (4th Ed.) vol. 3, p. 2914, § 1217. Had there been a net profit derived from the crops covered by plaintiff's mortgage, doubtless it would have been entitled to the same. The fact that there was no profit should not and did not deprive the defendants of the right to be reimbursed from the proceeds of the crops for the labor and money expended in the production thereof, when, as appears from the record, no crop would have been produced had not the defendant Dixon cared for them. The plaintiff lost nothing and it may have profited by reason of what was done by the defendant Dixon. Under such circumstances the plaintiff has no just cause to complain. While some of the findings made by the court below are open to the objections urged by appellant, the evidence all supports the finding that "except for the work done and expenditures made by the defendant Dixon no crops of any kind would have been produced upon said farm during the year 1927."

That fact, together with other facts heretofore indicated in this opinion, defeat plaintiff's right to recover in this action.

The judgment is affirmed. Respondents are awarded their costs.

STRAUP, C. J., and FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.