Mitchell D. **HENDERSON, Eileen Buttars, Laurena B. Henderson, and David Hale, Plaintiffs and Respondents,**

v.

**FOR–SHOR COMPANY, Defendant and Appellant.**

No. 870502–CA.

Court of Appeals of Utah.

June 10, 1988.

---

James C. Jenkins (argued), Logan, for defendant and appellant.

J. Blaine Zollinger (argued), Logan, for plaintiffs and respondents.

Before BENCH, DAVIDSON and JACKSON, JJ.

## OPINION

JACKSON, Judge:

In a memorandum decision entered December 17, 1984, the First District Court ruled that appellant For–Shor Company ("For–Shor") wrongfully repossessed cement forms from respondents that had been purchased by Mitchell Henderson ("Mitchell") and sold to his grandmother, Eileen Buttars ("Buttars"). Judgment was entered in favor of Buttars for $7,500 in fair rental value of the forms ($2,500 for each of the three years between the date of the conversion and the judgment) and $5,725.35 for the fair market value of the forms. Respondent Laurena Henderson was awarded a judgment for $100 in damages for appellant's trespass onto her property. Judgment was also entered in favor of David Hale for a $265 rental overcharge by appellant. The trial court dismissed respondents' causes of action for intentional infliction of emotional distress on Mitchell and interference with respondents' business relationships and concluded that respondents were not entitled to punitive damages.

We affirm the judgment of the trial court after reducing the amount of damages awarded for trespass and those awarded for the fair market value of the repossessed property.

## FACTS

In September, 1976, Mitchell borrowed $30,000 from First Security Bank to purchase cement forms (hereinafter referred

to as "1976 forms") from Interstate Industries, which in turn purchased forms from For–Shor in order to fill Mitchell's order. First Security Bank took a security interest in the 1976 forms that was subsequently released in August, 1978 when Eileen Buttars paid the debt.

Mitchell opened an account with For–Shor in October, 1976 under which all payments were to be applied first to interest, then to past accounts, then to current purchases and rent. Between 1976 and 1978, Mitchell purchased supplies and rented additional forms (hereinafter referred to as "1978 forms") directly from For–Shor. The 1978 forms were identical in appearance to the 1976 forms.

In June, 1978, Mitchell fell behind in his rental payments to For–Shor on this account. On June 30, 1978, For–Shor converted the 1978 form rentals to a purchase agreement, charged Mitchell's account $6,359, and credited him for most of his prior rental payments. Mitchell paid $6,400 on his account on August 2, 1978, and $311.03 on August 16, 1978. Mitchell accumulated additional charges of $5,371.64 prior to June 30, 1978, $456.33 on August 2, 1978, and $406.21 on August 16, 1978.

For–Shor filed suit against Mitchell in July, 1979 for recovery of his unpaid balance of $3,748.43. In response, Mitchell signed a promissory note on September 6, 1979 for this amount. For–Shor's former counsel testified at trial that Mitchell told him that the 1978 forms had been stolen and would not be available as collateral on the promissory note. Mitchell subsequently defaulted on the note, and For–Shor obtained a $3,831.78 default judgment on February 13, 1980. Mitchell filed for bankruptcy on July 16, 1980 and received a discharge on September 18, 1980. For–Shor was named on the creditor matrix, but the company claims it received no notice of the bankruptcy proceeding. The trial court noted in its memorandum decision that a copy of a notice of the first meeting of creditors in Mitchell's bankruptcy case was found in For–Shor's files.

Between April 13, 1981, and July 9, 1981, Mitchell leased out the forms for approximately $2,500 to David Hale ("Hale") and others. During this time, respondent Hale expressed interest in purchasing or renting cement forming equipment from Mitchell. On July 9, 1981, For–Shor repossessed some forms that were being stored at the residence of Mitchell's mother, Laurena Henderson. These were among the equipment Hale had discussed buying or renting from respondents Mitchell and Buttars. This action ensued.

## ISSUES PRESENTED

In its brief, appellant For–Shor sought reversal of the judgment below, claiming that its repossession of the forms was proper. During oral argument before this court, however, appellant admitted its liability for the wrongful conversion. We need only address several remaining issues of arguable substance presented in its appeal: (1) Was the evidence sufficient to support the court's determination of the fair market value of the converted forms? (2) Did the trial court err in awarding damages for lost rents in addition to the fair market value of the forms? (3) Was the evidence sufficient to support the trial court's finding of $7,500 in lost rental revenues? (4) Was the evidence sufficient to establish that a trespass occurred, resulting in damages of $100? and (5) Did the trial court err in awarding judgment to Hale for an overcharge by For–Shor that was not pleaded by respondents before trial, without any offset for monies allegedly owed by Hale?

In their brief, respondents attempt to challenge the judgment of the trial court insofar as it dismissed their causes of action other than for wrongful conversion and denied their request for sanctions against For–Shor, pursuant to Utah R.Civ.P. 37(c), for failure to make several requested admissions. However, we need not reach these issues because respondents have not filed a proper and timely cross-appeal. Contrary to Utah R.App.P. 4(d), effective January 1, 1985, respondents failed to preserve their right to attack the judgment by filing a notice of cross-appeal with-

in fourteen days of appellant's April 26, 1985 notice of appeal.[1] *See Kinsman v. Kinsman*, 748 P.2d 210, 211 (Utah App. 1988). *See also Halladay v. Cluff*, 739 P.2d 643, 645 n. 4 (Utah App.1987) (respondent who wishes to modify or vary the trial court's judgment must cross-appeal).

## FAIR MARKET VALUE OF FORMS

In Finding 5, the trial court stated that the fair market value of the forms converted by appellant was $5,725.35. For–Shor asserts that there was insufficient evidence to support this determination. A trial court's findings of fact will not be set aside unless clearly erroneous. Utah R.Civ.P. 52(a). A finding is clearly erroneous only if it is against the clear weight of the evidence or the reviewing court otherwise reaches a firm and definite conviction that a mistake has been made. *State v. Walker*, 743 P.2d 191, 193 (Utah 1987). If there is a reasonably certain basis for it in the evidence, a trial court's award of damages will be affirmed on appeal. *See Gillmor v. Gillmor*, 745 P.2d 461, 462 (Utah App. 1987); *see also Sawyers v. FMA Leasing Co.*, 722 P.2d 773, 774 (Utah 1986).

In order to challenge the trial court's findings of fact, an appellant must first "marshal all the evidence in support of the trial court's findings and then demonstrate that even viewing it in the light most favorable to the court below, the evidence is insufficient to support the findings." *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985). In the instant matter, For–Shor must bear the burden of demonstrating that there is insufficient evidence to prove "[t]he fact of damages ... with reasonable certainty and the amount by a reasonable though not necessarily precise estimate." *Sawyers*, 722 P.2d at 774. *See also Acculog, Inc. v. Peterson*, 692 P.2d 728, 731 (Utah 1984).

A conversion of personal property is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels of another, to the alteration of their condition or the exclusion of the owner's rights. *Madsen v. Madsen*, 72 Utah 96, 102, 269 P. 132, 134 (1928). "[T]he measure of damages for conversion when property is not returned is the value of the property at the time of the conversion, plus interest." *Id. See Columbia Trust Co. v. Farmers' & Merchants' Bank*, 82 Utah 117, 125, 22 P.2d 164, 167 (1933); *cf. Murdock v. Blake*, 26 Utah 2d 22, 484 P.2d 164, 169 (1971). Thus, we need only determine the sufficiency of the evidence presented at trial to support the court's determination of the value of the property in July, 1981, when the forms were wrongfully repossessed. Market value is defined as the price for which the property is bought and sold at retail in the marketplace or, in the case of unique property, the value to the owner. *Winters v. Charles Anthony, Inc.*, 586 P.2d 453, 454 (Utah 1978).

Despite appellant's confused claim that no evidence of the value of the converted items was presented at trial, the record is replete with documentary and testimonial evidence to support the trial court's finding. Exhibit P4 is an invoice from For–Shor to Mitchell with the heading "Form Rental—June 1978," in which he was charged $6,359 for the forms and then credited for 80% of his prior lease payments. Exhibit P3 shows that Mitchell was billed for the balance on June 30, 1978 when For–Shor converted Mitchell's 1978 rental of the equipment to a purchase agreement.

Appellant's general manager at the time, James Snarr, testified that this leased equipment was billed to Mitchell in Exhibits P3 and P4 (using 1978 prices for new equipment discounted by part of his rental

---

1. The Utah Supreme Court recently denied the affirmative relief requested on appeal by a respondent who failed to comply with the cross-appeal filing requirements in former Utah R.Civ.P. 74(b), the precursor to Utah R.App.P. 4(d), which was itself superseded last year. *Estate of Lewis*, 738 P.2d 617, 623 (Utah 1987).

*See also Terry v. Zions Cooperative Merc. Inst.*, 617 P.2d 700, 701 (Utah 1980) (decided under former Utah R.Civ.P. 74 and 75). Cross-appeal practice is presently governed by R. Utah Ct. App. 4(d) (effective January 13, 1987) and R. Utah S.Ct. 4(d) (effective April 20, 1987).

payments) because rental payments were not kept up and the equipment had not been returned to For-Shor. Not all the pieces listed in Exhibit P4 were taken from Laurena Henderson's home in July, 1981. Although the forming equipment items eventually repossessed were not the same exact pieces for which Mitchell was charged in 1978, they were identical in type and appearance. Snarr admitted that the 1978 billing reflected the values of those types of equipment at that time. He also testified that the forms, if maintained properly, hold their value well.

More important, however, is appellant's Exhibit D27, For-Shor's standard return form on which the items actually picked up at Laurena Henderson's by For-Shor's employee, Dan Sharp, were listed on July 9, 1981. This document, initialed by Snarr, also lists values of the specific types of items repossessed; these are the prices at which the forms would be retailed new. Because the repossessed forms were used, requiring reconditioning to put them back in new condition, Snarr indicated that their value used was approximately 76% of their value new. He also stated that the repossessed forms were placed back into For-Shor's rental pool and were rented out at a monthly rate of 8% of the 1984 new prices (considerably higher than 1981 values).

Using the new values on Exhibit D27 gives the following total values for the equipment taken by appellant, reduced to take into account their used condition at the time of conversion:

| | | | | | | |
|---|---|---|---|---|---|---|
| 55 | 2' × 8' panels | @ $96.00 | = | $5,280 × .76 | = | 4,012.80 |
| 24 | 2' × 4' panels | @ $53.00 | = | 1,272 × .76 | = | 966.72 |
| 2 | 6" × 8' inside corners | @ $63.00 | = | 126 × .76 | = | 95.76 |
| 2 | 6" × 4' inside corners | @ $32.00 | = | 64 × .76 | = | 48.64 |
| 900 | wedge bolts | @ $ .28 | = | | | 252.00 |
| | Total value | | | | | $5,375.92 |

The market value of the converted forms found by the trial court in Finding 5, $5,725.35, differs from this amount by $349.43. The sum used by the trial court was adopted from the calculation in respondents' post-trial memorandum, in which they had used the quantities and items shown above, but had taken the unit prices and increased them by 8% to allow for price increases up to the time of trial in 1984.

■ In light of *Madsen*, it is clear that the trial court erred in computing the conversion damages based on the value of the forms at the time of trial instead of at the time of the conversion. Accordingly, damages awarded for the value of the forms must be modified to $5,375.92. Nonetheless, respondents have not otherwise shown that the record evidence is insufficient to support the court's finding, as modified. We, therefore, will not set aside the trial court's determination on this point.

## FAIR RENTAL VALUE

■ For-Shor's next claim is that the trial court erred as a matter of law in awarding damages for rental revenues lost by respondents during the three years between the wrongful taking and the trial. As noted above, the Utah Supreme Court has stated that the measure of damages in a conversion action is the value of the property at the time of the conversion, *plus interest. Madsen*, 72 Utah at 102, 269 P. at 134.

However, rules relating to the measure of damages are flexible, and "can be modified in the interest of fairness." *Winters*, 586 P.2d at 454. The primary objective in rendering an award of damages for conversion is to award the injured party full compensation for actual losses:

The damages in an action for conversion are measured by the sum of money necessary to compensate the plaintiff for all actual losses or injuries sustained as a natural and proximate result of the defendant's wrong. Special damages may be recovered in an action for conversion for any injury proximately resulting from the conversion. Damages flowing from the conversion which are not ordi-

nary, usual, or commonly to be expected, are recoverable if, under the circumstances, it can be fairly said that both parties have these consequences in contemplation at the time of the wrong complained of, as the probable result thereof, and if these unusual consequences are neither uncertain, unnatural, nor remote as to cause, nor speculative and conjectural in effect. Thus, compensation for time lost as a proximate result of the conversion, or for time and money spent in pursuit of the property converted, may be recovered. The owner may also recover special damages resulting from the withholding of the property.

18 Am.Jur.2d *Conversion* § 117 (1985). Special damages for conversion may include: the amount of any further pecuniary loss of which the deprivation has been a legal cause; interest from the time at which the value is fixed; and compensation for the loss of use not otherwise compensated. Restatement (Second) of Torts § 927(2) (1979).

The value of the use of property converted is ordinarily not regarded as a separate recoverable damage item in an action for conversion where, because the property has not been returned, the plaintiff recovers the full value of the property at the time of conversion plus interest. *E.g., Hardin v. Marshall*, 176 Ark. 977, 5 S.W.2d 325 (1928); *Martinez v. Vigil*, 19 N.M. 306, 142 P. 920 (1914). And, of course, if the property's rightful owner cannot prove any particular pecuniary loss resulting from the absence of the property, damages for the loss of its use are not awardable. *See Lafleur v. Sylvester*, 135 So.2d 91 (La.App. 1961).

In some circumstances, however, an award of consequential damages for the loss of use of converted property is an appropriate substitute for the interest awardable as damages for conversion:

Where interest on the value of the property is awarded, the value of the use of the property from the date of the conversion may not be recovered in addition thereto, since damages for the use of the property are generally regarded as in lieu of interest. But *in some cases, the value of the use of the property has been regarded as recoverable where such item of damages exceeds the amount of interest on the value of the property.*

18 Am.Jur.2d *Conversion* § 118 (1985) (emphasis added) (footnotes omitted). *See also Dennis v. Southworth*, 2 Wash.App. 115, 467 P.2d 330, 337 (1970) (reasonable rental value of wrongfully converted tractor awarded in addition to fair market value where defendant knew at time of taking that such consequential damages would ensue).

We believe that an award of damages in this case for the loss of use of the converted forms is proper. Ownership of an item of property carries with it the right to use and control the use of that item. Where the defendant injures, destroys, or takes an item of property, there has been a loss of one of the valuable interests, i.e., the right to use the property. Here, respondent Buttars generated income from the lease of the forms to other individuals, as did For-Shor after the wrongful taking. Appellant was indisputably aware that renting out forms was a source of income for Buttars. An award of only the fair market value of the converted property, without accounting for interest or other special damages, would ignore her right to use and to control the use of the converted property as a valuable incident of ownership. An award of damages in the form of legal interest on the value of the converted property would also be inadequate to compensate Buttars for her actual loss. The evidence shows that forms were rented out by For-Shor for a monthly charge of 8% of the current retail value of the forms if new. For-Shor should not be permitted to profit from the act of conversion by retaining rents for the forms that would otherwise have been earned by the rightful owner of the property.

Generally, damages for interference with the plaintiff's right to use the property are measured by the rental value of the item involved or by the reasonable cost of hiring a replacement item. *See* 22 Am.Jur.2d *Damages* §§ 152, 176 (1965). Other states

have approved fair rental value as the proper measure of damages for loss of the use of property. *E.g., United States ex rel. Farmers Home Admin. v. Redland,* 695 P.2d 1031, 1038 (Wyo.1985). *See also Steinman v. City of Seattle,* 16 Wash.App. 853, 560 P.2d 357 (1977); 18 Am.Jur.2d *Conversion* § 121 (1985) ("The rental value of the property is as appropriate a measure of damages as interest which would be computed on the value of the property taken.").

We affirm the trial court's award of the fair rental value of the converted property as consequential damages in lieu of interest on the fair market value of the converted forms.

■ Appellant next argues that the evidence is insufficient and too speculative to establish the lost rental revenues of $2,500 per year found by the trial court. We disagree. At trial, Mitchell testified that he rented the forms in question to Hale on at least two occasions, as reflected in Exhibit P9. He stated that he rented the forms out to other people, as shown in Exhibit P10, a receipt book with several pages missing. He also testified that a few of his rentals do not appear in either exhibit and estimated total rental revenues in the three-month period from April to July, 1981, to be $2,500. There is also substantial evidence in the record of the market for form rentals during the relevant time period.

Furthermore, appellant's general manager testified that the forms wrongfully taken were put into For–Shor's pool and rented out at a monthly rate of 8% of the *new* value of the forms. Even if conservatively based on the $5,375.92 *used* value of the forms at the time of conversion in July of 1981, their rental value each month of a six-month construction period each year would be $430, for total annual rental revenues of $2,580.

Because the trial court's award of $7,500 as the value of lost rents of the forms from 1981 to 1984 is based on substantial and sufficiently definite evidence in the record, we will not disturb it on appeal.

## TRESPASS

■ The trial court concluded that appellant trespassed on Laurena Henderson's property when it took the forms in July, 1981. She was awarded $100 for damages incidental to the trespass.

Laurena Henderson testified at trial that, on the day the forms were repossessed, she observed several individuals load the forms onto a truck, then travel across the graveled driveway, onto her lawn approximately ninety feet, and out through her pine trees. She stated that some "no trespassing" signs were overturned and that the truck "mashed the grass down, and the soil." She also stated, however, that the damages caused as a result of the trespass were "not enough to worry about."

Although this evidence, if believed by the finder of fact, is sufficient to show that a trespass occurred, we agree with appellant that there is no evidence to support an award of $100 in actual damages resulting from the trespass.

Generally, the measure of damages for tortious injury to real property is the difference between the value of the property immediately before and immediately after the injury. *Thorsen v. Johnson,* 745 P.2d 1243, 1244–45 (Utah 1987); *Ault v. Dubois,* 739 P.2d 1117, 1120 (Utah App.1987); *see also Pitts v. Pine Meadow Ranch, Inc.,* 589 P.2d 767, 769 (Utah 1978). An alternative measure is the cost of restoration, provided that restoration costs do not exceed diminution in value. *See Thorsen,* 745 P.2d at 1244–45 n. 1; *Ault,* 739 P.2d at 1120. In circumstances where no substantial damages result and none are proved, the law will infer nominal damages for the unauthorized entry onto the real property of another. 75 Am.Jur.2d *Trespass* § 51 (1974). *Cf. Turtle Management, Inc. v. Haggis Management Inc.,* 645 P.2d 667, 670 (Utah 1982) ("Nominal damages are recoverable upon a breach of contract if no actual or substantial damages resulted from the breach or if the amount of damages has not been proven.").

"Nominal damages" has been defined as "a trivial sum such as one cent or one

dollar awarded to a plaintiff whose legal right has been invaded but who has failed to prove any compensatory damages." *Gould v. Mountain States Tel. & Tel. Co.,* 6 Utah 2d 187, 189–90, 309 P.2d 802, 803 (1957); *see also Fashion Place Assocs. v. Glad Rags, Inc.,* 82 Utah Adv.Rep. 10, 11, 754 P.2d 940 (1988) ("Where nominal damages are allowed, one dollar is the amount generally awarded.") (citing *Snyderville Transp. Co. v. Christiansen,* 609 P.2d 939, 941–42 (Utah 1980)). The Utah Supreme Court has held that an award of $75 for contract breach is not "nominal." *Gould,* 6 Utah 2d at 189, 309 P.2d at 803. *See also* 22 Am.Jur.2d *Damages* § 6 (1964) ("A considerable amount—as, for example, $100 or $200—is a substantial recovery, and does not come within the definition of nominal damages. . . ."). We likewise conclude that an award of $100 for trespass is not "nominal" damages.

In light of the absence of evidence sufficient to show that appellant's trespass caused any actual damage to Laurena Henderson, we hold that the trial court erroneously awarded her an amount in excess of a nominal sum. We therefore reduce the trial court's award of trespass damages to the sum of $1.00.

### OVERCHARGE

For–Shor's final claim on appeal is that the trial court erred in awarding $265 to respondent Hale for an overcharge in renting forms to him. Appellant contends that Hale is not entitled to judgment in this amount for two reasons. First, Hale did not raise the issue of an overcharge in his complaint. Second, the evidence does not support the award.

Appellant's general manager testified at trial that Hale had been overcharged $252.58 on August 31, 1981. This evidence is alone sufficient basis for the trial court's determination that Hale had been overcharged by appellant. Snarr also testified that Hale had an unpaid balance on his For–Shor account on March 30, 1982. For–Shor argues that this court should offset any overcharge by the unpaid balance due and owing to it. Hale responds that the evidence supports his claim and that there should be no offsetting amount since the general manager testified that the unpaid balance had been written off as a bad debt.

We address first the issue of damages awarded for items not pleaded. Under Utah R.Civ.P. 54(c)(1), every final judgment "shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings." This rule requires trial courts to be liberal in awarding appropriate relief justified by the facts developed at trial, as long as the failure to request a particular form of relief does not prejudice a party in the preparation or trial of the case. *Butler v. Wilkinson,* 740 P.2d 1244, 1263 (Utah 1987). "If there is no prejudice, it is necessary only that the relief granted be supported by the evidence and be a permissible form of relief for the claims litigated." *Id.* *See also Clark v. Second Cir. Ct.,* 741 P.2d 956, 957–58 (Utah 1987); *Combe v. Warren's Family Drive–Inns, Inc.,* 680 P.2d 733, 735 (Utah 1984).

The record reveals that respondents did not know about the overcharge until trial when Snarr testified. Appellant did not object to the admission of the document reflecting the overcharge. It cross-examined the general manager about the bookkeeping error and introduced additional evidence of the unpaid balance on Hale's account. In light of appellant's failure to show any prejudice resulting to it from the consideration of the overcharge claim, we hold that the issue was properly addressed by the trial court.

We turn next to the question of whether For–Shor was entitled to an offset by the sum of $237.77 plus interest. In its answer to the complaint, appellant claimed an offset against any claims alleged by respondents.

For–Shor's general manager testified that Hale had an unpaid balance in March, 1982 that had been written off as a bad debt. Respondents requested at trial a copy of the monthly statement showing the unpaid balance, but Snarr said it was located in his office. No additional evidence,

other than the general manager's recollection, was presented supporting a claim for an offset, although no evidence was presented to contradict the general manager's testimony.

Application of the "clearly erroneous" standard in Utah R.Civ.P. 52(a) does not eliminate the deference traditionally afforded the fact finder to determine the credibility of witnesses. *State v. Wright*, 744 P.2d 315, 317 (Utah App.1987). In this case, the trial court could have reasonably concluded that Snarr's undocumented recollection alone did not support appellant's claimed offset. Because the trial court's failure to find in appellant's favor on this point is not against the clear weight of the evidence and we are not otherwise convinced that a mistake has been made, we affirm the trial court's determination.

## CONCLUSION

Damages awarded respondent Buttars for the value of the forms at the time of conversion are reduced to $5,375.92. Damages awarded respondent Laurena Henderson for trespass are reduced to the nominal sum of $1.00. With those modifications, the judgment of the trial court is affirmed. The parties are to bear their own costs on appeal.

BENCH, J., concurs.

DAVIDSON, J., concurs in result only.