2008 UT App 138

**Helen W. BOYER, Trustee, Plaintiff and Appellant,**

v.

**Thomas Vern BOYER; Carrie Gibson Boyer; Fewkes Canyon, LLC, a limited liability company; Jeremy Boyer; Kimberly Boyer; and Dannie Green, Defendants and Appellees.**

No. 20061163–CA.

Court of Appeals of Utah.

April 17, 2008.

Ray G. Martineau, Anthony R. Martineau, and Brett D. Cragun, Salt Lake City, for Appellant.

Robert H. Wilde, Midvale; and John N. Braithwaite, Salt Lake City, for Appellees.

Before THORNE, Associate P.J., BILLINGS and DAVIS, JJ.

## OPINION

BILLINGS, Judge:

¶1 Helen Boyer (Plaintiff), as trustee of the Lyle and Helen Boyer Revocable Trust (the Trust), appeals the trial court's order granting summary judgment and dismissing Dannie Green as a defendant in this case. Plaintiff also appeals the trial court's failure to award damages, costs, and attorney fees. We affirm in part, and reverse and remand in part.

## BACKGROUND

¶2 Joseph and Lois Boyer owned land in Summit County, Utah, near Coalville, Utah, including two adjoining sections: Section 31, Township 3 North, Range 6 East, Salt Lake Base and Meridian (Section 31), and Section 32, Township 3 North, Range 6 East, Salt Lake Base and Meridian (Section 32). Joseph died in 1967 and Lois died in 1971.

¶3 In 1979, William Boyer—co-executor of Joseph and Lois Boyer's estate—executed an executor's deed conveying various property to Vern Boyer, now deceased. According to the executor's deed, Vern received Section 32. Eventually, Vern's son, Tom Boyer, acquired Section 32. In October 2003, Section 32 passed to Fewkes Canyon, LLC (Fewkes), and shortly thereafter, Fewkes conveyed a few acres to Tom's son, Jeremy Boyer.[1] Tom Boyer, Fewkes, and Jeremy Boyer (collectively, Defendants) are among the named defendants in this action.

¶4 Also in 1979, William Boyer executed another executor's deed conveying property to Lyle Boyer, now deceased. According to this executor's deed, Lyle received Section 31. Lyle retained his interest in Section 31, and in 1988 he quitclaimed Section 31 to the Trust.

¶5 In the lifetime of Joseph and Lois, Sections 31 and 32 were fenced around their perimeter. However, there was no fence between Sections 31 and 32. Thus, not long after the deaths of Joseph and Lois, a dispute arose between Vern (and his son Tom) and Lyle concerning the boundary between Sections 31 and 32. In 1976, Tom hired licensed surveyor Fred Malan to conduct a survey and establish a fence line between Sections 31 and 32 (the Malan Survey). Malan prepared a certified report in September 1977. According to the Malan Survey, Malan located a rock with markings on the north boundary of the line between Sections 31 and 32, and indicated that the rock was at the intersection between Sections 31 and 32.

¶6 Not long after the Malan Survey, sometime in 1977 or 1978, Tom erected a fence between Sections 31 and 32. Tom called this fence a "stock fence" and maintained that it was erected only to keep out livestock.

¶7 Later, in 1985, because of continuing disagreement on the location of the boundary line, Tom hired another surveyor, Bing Christensen, to establish the line back to the original 1874 U.S. Government survey (the Christensen Survey). Christensen prepared a drawing showing his results, including stone monuments and fence corner posts he found and accepted as evidence of the location of corresponding section corners. The drawing indicated that a stone was located at the "fence corner" where Sections 31 and 32 meet at the northern boundary. Thus, the Christensen Survey and the Malan Survey both reflected a similar boundary line between Sections 31 and 32.

¶8 In 2003, because of continuing disagreements, Tom commissioned a third survey by Dannie Green of Alta Surveying (the Green Survey). The Green Survey indicated that the boundary line between Sections 31 and 32 was approximately 420 feet west of where the Malan and Christensen Surveys had placed the northern boundary and approximately 50 feet west of where the Malan and Christensen Surveys had placed the southern boundary. This discrepancy resulted because the Green Survey did not take at face value the location of the stone, as did the Malan and Christensen Surveys. Instead, the Green Survey relied upon the topographic calls from the original 1874 survey. Thus, the Green Survey moved the boundary line

---

1. Tom Boyer's son Jeremy Boyer is a managing member of Fewkes.

into Section 31 about 420 feet at the north end and 50 feet at the south end. After performing the survey, Green filed a survey plat with the Summit County surveyor's office.

¶ 9 Based on the Green Survey, Tom removed the fence he had erected in 1977 or 1978 and erected a new fence along the line shown as the boundary by the Green Survey. When Tom removed the old fence, he stored its remnants on Section 32.

¶ 10 Plaintiff brought a quiet title action seeking to resolve the boundary between Sections 31 and 32. Plaintiff also named Green as a defendant, asserting claims for negligence in performing the Green Survey and for wrongful lien under Utah Code section 38–9–1(6), *see* Utah Code Ann. § 38–9–1(6) (2005). The trial court dismissed Green as a defendant on summary judgment. The matter then went to trial and the trial court quieted title in the disputed property in the Trust and ordered the fence moved to match the previously established property line. The fence has since been moved back to its original location. The trial court did not award the Trust damages or attorney fees. Plaintiff now appeals the dismissal of Green as a defendant and the denial of damages, costs, and attorney fees.

## ISSUES AND STANDARDS OF REVIEW

¶ 11 First, Plaintiff argues that the trial court erred when it granted Green's motion for summary judgment and dismissed Green as a defendant in this case. "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R. Civ. P. 56(c). On appeal, we review the district court's ruling on summary judgment for correctness." *Jackson v. Mateus,* 2003 UT 18, ¶ 6, 70 P.3d 78.

¶ 12 Second, Plaintiff argues that the trial court erred when it ruled that Plaintiff did not sustain her burden of proof on damages. The adequacy of damages is a question of fact, and an appellate court will not overturn the trial court's findings unless they are clearly erroneous. *See In re Knickerbocker,* 912 P.2d 969, 981 (Utah 1996).

¶ 13 Third, Plaintiff argues that the trial court failed to award her costs and attorney fees. " 'Whether attorney fees are recoverable in an action is a question of law, which is reviewed for correctness.' " *Miller v. Martineau & Co.,* 1999 UT App 216, ¶ 28, 983 P.2d 1107 (quoting *Wardley Corp. v. Welsh,* 962 P.2d 86, 92 (Utah Ct.App.1998)).

## ANALYSIS

I. Green's Dismissal as a Defendant

¶ 14 On appeal, Plaintiff first argues that the trial court erred in granting summary judgment and dismissing Green as a defendant. We conclude that because Green performed his survey work at Tom's request, Green's duty ran toward Tom and not toward Plaintiff, who was the adjacent landowner and who never relied on the survey.

¶ 15 To prevail on a negligence claim in Utah, a plaintiff must establish, among other things, that the defendant owed the plaintiff a duty of care. Absent a showing of duty, the claim of negligence has no merit. *See Young v. Salt Lake City Sch. Dist.,* 2002 UT 64, ¶ 12, 52 P.3d 1230. Accordingly, a dismissal is properly granted when the defendant owed no duty to the plaintiff. *See Slisze v. Stanley–Bostitch,* 1999 UT 20, ¶ 13, 979 P.2d 317.

¶ 16 To support her assertion that Green owed Plaintiff a duty, Plaintiff relies on the Utah Supreme Court case *Bushnell v. Sillitoe,* 550 P.2d 1284 (Utah 1976). Her reliance is misplaced. The Utah Supreme Court recognized the general rule of no duty to adjoining landowners not contracting for or relying on the survey, as well as an exception to that general rule in some circumstances. *See id.* at 1286. However, the court did not adopt the exception as the rule in *Bushnell. See id.* Specifically, the court held that the Bushnells, as adjoining landowners, were "not within the class of persons for whose guidance the [survey] was supplied." *Id.* The court indicated that part of the reason the surveyor "could not be held liable to the Bushnells" as adjoining landowners is that the Bushnells were not harmed by their *reliance* on the information they re-

ceived from the surveyor. *Id.* at 1286; *see also id.* at n. 4 (noting that the Restatement of Torts provides that "[o]ne who in the course of his ... profession supplies information for the guidance of others ... is subject to liability for *harm caused* to them by their *reliance* upon the information" (emphasis added)). Thus, we conclude that a surveyor does not owe a duty of care to an adjoining landowner when the adjoining landowner did not commission the survey and did not rely on that survey.

¶ 17 This position is supported by case law in other jurisdictions. In *DeCapua v. Lambacher,* 105 Ohio App.3d 203, 663 N.E.2d 972 (1995), a property owner brought an action for negligent misrepresentation against a surveyor hired by a neighboring property owner to establish the boundary line between the properties. *See id.* at 973. The Ohio Court of Appeals acknowledged that Ohio recognizes the doctrine of negligent misrepresentation but that the doctrine does not extend to persons who do not *rely* upon the information and, hence, does not extend to neighboring property owners who dispute the survey conducted. *See id.* at 974.

¶ 18 In *Gipson v. Slagle,* 820 S.W.2d 595 (Mo.Ct.App.1991), the Missouri Court of Appeals similarly held that a surveyor hired by a landowner owed no duty of care to adjoining landowners. The court affirmed the trial court's dismissal of the plaintiff's negligence claims against the surveyor, stating:

> [T]he [plaintiffs] fail[ed] to show that the surveyor owed a duty of care to them or that they had relied upon the survey. The survey at issue was prepared ... on behalf of the [adjoining property owner] and there was no allegation of any action taken by the [plaintiffs] in reliance upon the survey. In fact, the [plaintiffs] *disputed the boundary line established by the survey, rather than relied upon it.*

*Id.* at 598. This is similar to the case before us. Plaintiff in the case before us never relied upon the Green Survey, but she instead disputed the boundary that the Green Survey had established.

¶ 19 We acknowledge, as did the trial court, Plaintiff's difficult position. Still, the trial court noted that despite Plaintiff's diffi-

cult situation, "she is not without a remedy." To the contrary, Plaintiff pursued a remedy against Tom, the adjoining landowner who commissioned the Green Survey. In this case, there were two competing surveys and the trial court determined the proper boundary and quieted title in the properties. Thus, the trial court's declaratory judgment in favor of Plaintiff provided Plaintiff with a remedy. Consequently, we affirm the trial court's dismissal of Green as a defendant in this matter.

## II. Damages

■■■■■ ¶ 20 Next, Plaintiff argues that the trial court erred when it failed to award her damages. The issue of damages is fact-sensitive. At trial, Plaintiff presented specific evidence of damages, which the trial court found to be too speculative. Accordingly, the trial court rejected the damages evidence and refused to award damages to Plaintiff. Plaintiff challenges the trial court's failure to award damages, but does not marshal the evidence supporting the trial court's determination that the damages evidence was too speculative.

¶ 21 "In order to challenge a court's factual findings, an appellant must first marshal all the evidence in support of the finding and then demonstrate that the evidence is legally insufficient to support the finding even when viewing it in a light most favorable to the court below." *Chen v. Stewart,* 2004 UT 82, ¶ 76, 100 P.3d 1177 (internal quotation marks omitted); *see also* Utah R.App. P. 24(a)(9) ("A party challenging a fact finding must first marshal all record evidence that supports the challenged finding."). To fulfill the duty to marshal, Plaintiff was required to "present ... every scrap of competent evidence introduced at trial which supports the very findings [she] resists." *Chen,* 2004 UT 82, ¶ 77, 100 P.3d 1177. Plaintiff did not fulfill this duty to marshal, and thus, we "affirm the [trial] court's findings on that basis alone." *Id.* ¶ 80.

¶ 22 Nevertheless, our prior case law requires an award of at least nominal damages. In *Henderson v. For–Shor Co.,* 757 P.2d 465 (Utah Ct.App.1988), this court held that "[i]n

circumstances where no substantial damages result and none are proved, the law will infer nominal damages for the unauthorized entry onto the real property of another." *Id.* at 471. As we previously noted, Plaintiff failed to prove damages before the trial court. Still, the trial court should have awarded nominal damages. Accordingly, we reverse and remand to the trial court for an award of nominal damages.

### III. Costs and Attorney Fees

¶ 23 Finally, Plaintiff asserts that the trial court erred by not awarding her costs and attorney fees. First, regarding Plaintiff's claim for costs, we conclude that Plaintiff waived any right to receive costs under rule 54(d) of the Utah Rules of Civil Procedure, *see* Utah R. Civ. P. 54(d)(2). Rule 54(d) provides that costs are automatically awarded "to the prevailing party unless the [trial] court otherwise directs." *Id.* Rule 54(d) also requires the party to whom costs have been awarded to claim those costs within five days. *See id.* The trial court never directed that Plaintiff was not to receive costs, thus allowing Plaintiff to claim costs as the prevailing party within five days. Plaintiff never claimed costs pursuant to rule 54(d) and therefore waived the right to receive costs.

¶ 24 Second, regarding Plaintiff's claim for attorney fees, we conclude that the trial court did not err in failing to award attorney fees. Plaintiff claims that she is entitled to attorney fees under Utah Code section 78–27–56, which states that "in civil actions, the [trial] court shall award reasonable attorney[ ] fees to a prevailing party if the [trial] court determines that the ... defense to the action was without merit and not ... asserted in good faith." Utah Code Ann. § 78–27–56 (2002). Under this section, the defense must be both (1) "without merit" and (2) "not ... asserted in good faith." *Id.* A frivolous action having no basis in law or fact is "without merit," but it is nevertheless "in good faith" as long as there is an honest

belief that it is appropriate and as long as there is no intent to hinder, delay, defraud, or take advantage of the other party. *See Cady v. Johnson,* 671 P.2d 149, 151 (Utah 1983).

¶ 25 In its findings of fact, the trial court specifically found that Defendants' actions were not in bad faith. The evidence supports that determination. Tom spent time and money to have Green perform the survey, and Tom put the fence along that exact survey line. Tom also testified that he is not a surveyor and that he understood the section line to be where the Green Survey had placed the line. Further, when Tom hired Green to perform the survey, he provided Green with all of the documents and materials that Green needed to complete the survey. Finally, Tom asked Green to perform the survey because Green had performed surveys for a neighboring property owner and was thus familiar with the area. Accordingly, we agree with the trial court that Defendants' defense was not in bad faith.[2] We affirm the trial court's denial of attorney fees to Plaintiff.

### CONCLUSION

¶ 26 In sum, we conclude that Green did not have a duty to Plaintiff and therefore affirm the trial court's dismissal of Green as a defendant in this case. We further conclude that Plaintiff did not marshal the evidence regarding her damages. However, because the trial court failed to award nominal damages, we reverse and remand on this issue for the award of nominal damages. Finally, we conclude that Plaintiff is not entitled to costs because she failed to claim costs within five days after entry of judgment as required under rule 54(d) of the Utah Rules of Civil Procedure and that Plaintiff is not entitled to attorney fees under Utah Code section 78–27–56 because Defendants' defense was not asserted in bad faith. Accordingly, we also affirm the trial court's denial of costs and attorney fees.

---

2. Alternatively, Plaintiff argues that *Stewart v. Utah Public Service Commission,* 885 P.2d 759 (Utah 1994), allows attorney fees even "in the absence of a statutory or contractual authorization [because] a court has inherent equitable power to award reasonable attorney fees when it deems it appropriate in the interest of justice and equity." *Id.* at 782. However, the facts of this case do not support the application of the doctrine found in *Stewart.*

¶ 27 WE CONCUR: WILLIAM A. THORNE JR., Associate Presiding Judge and JAMES Z. DAVIS, Judge.

3. Searches and Seizures 🔑12